J-S37012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDGAR CASONOVA | : | |
| | : | |
| Appellant | : | No. 88 EDA 2018 |

Appeal from the PCRA Order December 4, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000997-2014

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 17, 2019**

Edgar Casonova appeals from the December 4, 2017 order denying PCRA relief.  We affirm.

On September 14, 2013, Brian Kane and his two sons went to a makeshift barbershop located in the basement of 1537 Hunting Park Avenue. While Mr. Kane was waiting to get his haircut, his cell phone disappeared.  Mr. Kane suspected Appellant of taking the cell phone, and first asked him, and then accused him, of taking the phone.  According to Mr. Kane, Appellant denied that he had the phone, and left the barbershop.

Mr. Kane testified he later confronted Appellant again outside on the steps leading to the upstairs residence at 1537 Hunting Park Avenue, which was Appellant's home.  According to Mr. Kane, it started with a shouting match in the front yard, and when he took a step toward Appellant, Appellant pulled out a knife hidden behind his back and stabbed Mr. Kane in the back.  As Mr.

Kane struggled with Appellant, Appellant stabbed him eight more times, puncturing his lung. Upon seeing the victim fall, Appellant dropped the knife and ran into his home. N.T. (Waiver Trial), 11/20/14, at 32-37, 69.

Appellant testified in his own defense. He denied that he was in the barbershop, although he was outside. He confirmed that Mr. Kane had accused him of stealing his cell phone. However, Appellant disputed Mr. Kane's account of where the fight took place. Appellant stated that Mr. Kane entered his home and started yelling at him and punching him in the face. His friend Meranda Casillas and his two children were there. Appellant testified that Mr. Kane wrestled him to the floor and was punching and strangling him when a knife fell out of Mr. Kane's pocket. Appellant retrieved the knife and began stabbing Mr. Kane in an effort to force him out of the house. Mr. Kane stumbled out of the door where he collapsed on the walk. Appellant followed him outside and dropped the knife next to him.

Police and emergency medical personnel arrived quickly. The responding officer, Officer Keith Stefankiewicz, testified that he knocked on Appellant's door and Appellant answered, "covered with blood." *Id*. at 75. The officer could not remember seeing any blood in Appellant's home other than on his person. Photographs showed a bloodstain on the walkway leading to the steps in front of Appellant's home, and no blood on the steps. *Id*. at 74-75, 79, 117.

At trial, Appellant maintained that he acted in self-defense.[1]  However, the trial court credited the victim's testimony and the photographs showing the bloodstains on the walk below the steps and concluded, "this incident did occur on the steps" rather than inside defendant's home.  *Id*. at 122. Accordingly, the Court found defendant guilty of attempted murder, aggravated assault, possession of an instrument of crime, simple assault, and recklessly endangering another person, and sentenced him to an aggregate term of nine to eighteen years of incarceration followed by four years of probation.

Appellant did not file a direct appeal.  On August 19, 2015, he filed a timely *pro se* PCRA petition alleging that trial counsel was ineffective for failing to seek a postponement to call Meranda Casillas, a crucial eyewitness, as a defense witness.  At the time of trial, Ms. Casillas was in the hospital in labor. Appellant filed a supplemental amended *pro se* petition, to which he appended the statement Ms. Casillas gave to police immediately after the altercation.[2]

---

[1] Appellant does not offer any rationale as to why it was legally significant that the victim entered Appellant's home and initiated the fight, rather than the altercation occurring on the front steps.  We assume that Appellant was relying upon the castle doctrine, a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense.  *See Commonwealth v. Childs*, 142 A.3d 823, 824 (Pa. 2016).

[2]  In her statement to police, Ms. Casillas told police that "[t]he dude [that] got stabbed walked into the house and said I don't have time for this shit and where is my phone."  Investigation Interview Record, 9/14/13, at 1. According to Ms. Casillas, Mr. Kane pushed Appellant against the wall and they

The court appointed counsel, and counsel filed an amended petition on February 8, 2017. Appellant pled therein that Ms. Casillas told police that Mr. Kane confronted Appellant in Appellant's home, initiated the fight, and generally corroborated Appellant's account. Amended Petition, 2/8/17, at ¶6. He attached her certification confirming that she did not testify at the November 20, 2017 trial because she was in labor, but that she had intended to testify on Appellant's behalf. Appellant alleged that counsel was ineffective as he knew that Ms. Casillas was instrumental to his defense and unable to appear, but did not seek a continuance or a bifurcation to permit her to testify. *Id*.

The court ordered an evidentiary hearing, which took place on December 4, 2017.[3] Ms. Casillas testified that she was with Appellant and his two children at his 1537 Hunting Park Avenue residence on the date of the

---

started fighting. *Id*. There was blood on the clothes of both men. *Id*. However, Ms. Casillas stated that she did not see the stabbing. *Id*.

[3] After counsel for the Commonwealth introduced himself, he reminded the court "as a brief aside," that the court "had stated that at this hearing [it] only wanted to hear from the potential witness, you didn't want to hear from trial counsel, and that's why the Commonwealth didn't produce trial counsel today." N.T. Hearing, 12/4/17, at 2-3. The record does not disclose the PCRA court's reason for limiting the hearing. We note that, in order to prevail, Appellant was required to prove that trial counsel had no reasonable strategic basis for his inaction, and that the court's restriction may have impeded Appellant in satisfying that prong of the ineffectiveness test. *See Commonwealth v. Jones*, 596 A.2d 885, 888 (Pa.Super. 1991) (holding it is the appellant who has he burden to call trial counsel to testify at a PCRA hearing). However, there is no indication that Appellant objected to the procedure utilized by the PCRA court.

altercation. She stated, "[t]his guy came into the house and hit Edgar and then they started fighting." *Id*. at 4. She testified that the intruder was yelling, "I don't got time for this, where's my phone?" *Id*. at 6. She turned her attention to the children, and she did not actually see what occurred between the two men. *Id*. at 12. When she next had an opportunity to observe, "they were fighting in between the doorway and on the step." *Id*. She saw blood on Appellant and the intruder. *Id*. at 13. Appellant returned to the house to check on the children and then went back outside where the police handcuffed him. *Id*. Ms. Casillas testified that she was willing to come to court to testify about what happened, but she went into labor. Trial counsel called her at the hospital while she was delivering her daughter. *Id*. at 9.

Following the hearing, the Commonwealth moved to dismiss Appellant's PCRA petition, contending that Ms. Casillas's testimony was contradicted by photographic evidence and would have had no impact on the verdict. Hence, it argued, trial counsel was not ineffective for failing to request a continuance or to seek bifurcation to allow her to testify.

The PCRA court found Ms. Casillas's testimony "not credible" and further, that her statements contradicted Appellant's testimony at trial.[4] PCRA Court Opinion, 7/17/18, at 5. The court also concluded that Appellant failed

---

[4] After a review of the notes of testimony from the waiver trial and the PCRA hearing, as well as Ms. Casillas's statement to police, we disagree with the PCRA court's conclusion that her version of the events "contradicts" Appellant's account and would not have supported Appellant's claim of self-defense. Nonetheless, the PCRA court found her testimony "not credible," and we are bound by credibility determinations supported by the record.

to show arguable merit or prejudice as Ms. Casillas's testimony did not support Appellant's version of the events and would not have supported his self-defense theory. *Id*. at 5 (citing *Commonwealth v. Matias*, 63 A.3d 807 (Pa.Super. 2013)). PCRA relief was denied. Order, 12/4/17. Appellant timely appealed, new counsel was appointed after PCRA counsel was permitted to withdraw, and Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review: Did defense counsel Amato T. Santo, Esquire, provide ineffective assistance of counsel by failing to call a crucial eyewitness Meranda Casillas as a defense witness?" Appellant's brief at 3 (unnecessary capitalization omitted).

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Lane*, 81 A.3d 974, 977 (Pa.Super. 2013). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014).

In order to prevail on a claim that trial counsel was ineffective, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*,

925 A.2d 876, 880 (Pa.Super. 2007) (citation omitted). As we recently reiterated in **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043-44 (Pa.Super. 2019), in order to prove ineffectiveness, the petitioner has the burden of establishing all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009).

A claim has arguable merit when the factual averments, if true, would entitle the petitioner to relief. **See Commonwealth v. Jones**, 876 A.2d 380, 385 (Pa. 2005). This is a legal question. The test for determining whether counsel had a reasonable basis for his action is an objective one: whether no competent counsel would have chosen that course or, the alternative not chosen offered a significantly great likelihood of success. **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa.Super. 2013). In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. **Id**. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id**. If a petitioner fails to satisfy the prejudice prong, "the claim may be dismissed on that basis alone and the court need not first

determine whether the first and second prongs have been met."
***Commonwealth v. Rios***, 920 A.2d 790, 799 (Pa. 2007).

Appellant contends that Ms. Casillas was a crucial witness because she saw Mr. Kane enter the house without permission and attack Appellant therein. Her corroboration of Appellant's testimony in this regard was critical to his defense of self-defense.[5] Appellant alleges that trial counsel had no reasonable basis for his failure to call her as a witness, and that he should have obtained a continuance to permit her to offer testimony. Finally,

_____

[5] The castle doctrine creates an evidentiary presumption relevant to the evaluation of a claim of self-defense. ***Commonwealth v. Childs***, 142 A.3d 823, 824 n.1 (Pa. 2016) (citations omitted). The doctrine applies under circumstances enumerated in 18 Pa.C.S. § 505(b)(2.1), which provides:

> Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:
>
> (i)     The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.
>
> (ii)    The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505(b)(2.1) (as amended by Act 2011-10, on June 28, 2011).

Appellant maintains that there is a reasonable probability that the outcome would have been different but for counsel's ineffectiveness in this regard.

The Commonwealth counters that Appellant "was unable to establish prejudice." Commonwealth's brief at 7. It directs us to the PCRA court's finding that Ms. Casillas was not credible and that her story and Appellant's "did not match." N.T. Hearing, 12/4/17, at 33-34; **see also** PCRA Court Opinion, 7/17/18, at 4 (citing N.T. Hearing, 12/4/17, at 32) ("I do not find the information provided today to be credible, nor do I find that it would have made a difference to the fact finder at trial.").[6]

We note that Ms. Casillas's testimony corroborated Appellant's account that Mr. Kane entered Appellant's home and was the aggressor in the fight that ensued. In these critical respects, her testimony was relevant to Appellant's claim of self-defense, and specifically, the applicability of the castle doctrine. However, the PCRA court did not find the witness credible, and concluded that Ms. Casillas's testimony would not have made a difference during the bench trial. As the ultimate arbiter of fact at trial, the court believed Mr. Kane's account that the entire altercation occurred outside Appellant's home. The court found photographs depicting bloodstains on the walk leading to the steps, and the absence of evidence of bloodstains on the steps or in Appellant's home, to be persuasive in arriving at that conclusion.

---

[6] The PCRA court was the factfinder at the waiver trial.

After a thorough review of the record, we find support for the credibility determination of the PCRA court. Hence, we may not disturb it. **See Mitchell**, **supra**. Since Appellant could not prove prejudice, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/19