J-S50004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY DENNIS | : | |
| | : | |
| Appellant | : | No. 819 EDA 2020 |

Appeal from the PCRA Order Entered February 11, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003150-2016

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.: **FILED: MARCH 1, 2021**

Appellant, Jeffrey Dennis, appeals from the post-conviction court's February 10, 2020 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court briefly summarized the facts and procedural history of this case, as follows:

> [Appellant] was convicted by a jury of possession [with intent] to deliver cocaine, possession of cocaine, two counts of firearms not to be carried without a license, receiving stolen property[,] and two counts of [possession of] drug paraphernalia. On January 25, 2018, [Appellant] was sentenced to an aggregate term of 11½ to 32 years' imprisonment. A timely post-sentence motion was filed. It was denied on February 2, 2018. A timely notice of appeal followed. On April 2, 2019, the Pennsylvania Superior Court affirmed the judgment of sentence.

---

* Retired Senior Judge assigned to the Superior Court.

> ***Commonwealth v. Dennis***, [216 A.3d 339 (Pa. Super. 2019)] ([unpublished] memorandum). No further appeal was taken.
>
> Subsequently, on July 25, 2019, [Appellant] filed a *pro se* PCRA petition. Counsel was appointed. PCRA counsel filed a ***Turner/Finley***[1] no[-]merit letter. On January 7, 2020, a … notice of intent was issued in accordance with Pa.R.Crim.P. 907 ("Rule 907 Order"), notifying [Appellant] of this [c]ourt's intention to dismiss his petition without a hearing and of his right to respond to the notice. The Rule 907 Order permitted counsel to withdraw. After further review, on January 21, 2020, this [c]ourt vacated the Rule 907 Order, and scheduled an evidentiary hearing on the sole issue as to whether trial counsel's alleged ineffectiveness caused [Appellant] to reject a plea offer. The order also directed PCRA counsel to re-enter his appearance. On January 27, 2020, this [c]ourt appointed new PCRA counsel and excused previous counsel from re-entering his appearance.
>
> > [1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

PCRA Court Opinion (PCO), 6/4/20, at 1-2.

On February 7, 2020, the court conducted a PCRA hearing. On February 11, 2020, the court entered an order dismissing his petition. Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court thereafter filed its Rule 1925(a) opinion.

Herein, Appellant states two issues for our review:

1. The [PCRA c]ourt committed an error of law and abuse of discretion in determining that Appellant failed to prove that trial counsel's ineffectiveness caused Appellant to reject a plea offer.

2. The [PCRA c]ourt committed an error of law and abuse of discretion in not allowing … Appellant to admit into evidence trial counsel's disciplinary board opinion and findings suspending trial counsel from the practice of law[, a]s the findings directly impacted credibility issues made by the [c]ourt, especially as it relates to Appellant's testimony.

Appellant's Brief at 3.[1]

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland*** [***v. Washington***, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See*** [***Commonwealth v.***] ***Pierce***, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no

---

[1] We chastise Appellant for presenting two issues in his Statement of Questions Involved, but only one, undivided discussion in the Argument portion of his brief. ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein….").

reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali*, *supra*. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita*, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali*, … 10 A.3d at 291 (quoting *Commonwealth v. Collins*, … 957 A.2d 237, 244 ([Pa.] 2008) (citing *Strickland*, 466 U.S. at 694….)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first contends that his trial counsel acted ineffectively by "grossly misinforming him about the consequences of [a] plea offer[,] and not fully explaining the terms and conditions" thereof. Appellant's Brief at 9. According to Appellant, counsel's failures in this regard caused him to reject the offer to his detriment. *Id.* More specifically, he claims that the Commonwealth offered him a sentence of 5 to 10 years' incarceration if he pled guilty to persons not to possess a firearm and possession with intent to deliver. Appellant claims that he rejected this offer because his counsel erroneously told him the offered sentence was "the max he could receive[,]" and counsel did not explain "all the ramifications of rejecting this plea offer…."

- 4 -

*Id.* at 10. Appellant maintains that he was prejudiced because he rejected the offer, proceeded to trial, and was ultimately convicted of more offenses and sentenced to an aggregate term of 11½ to 32 years' incarceration.

The PCRA court summarized the evidence presented at the hearing on Appellant's ineffectiveness claim, as follows:

> [Appellant] testified that his trial attorney was Mr. Kevin Wray, who[,] in preparation for trial[,] he met with regularly and frequently at the Montgomery County prison. (PCRA Hearing[,] 2/7/20[, at] … 3-4). [Appellant] stated that he had a brief conversation with Mr. Wray regarding the Commonwealth's plea offer. *Id.* at 5, 6. Mr. Wray had provided [Appellant] with a copy of a guilty plea offer form containing the Commonwealth's offer. *Id.* at 7. The guilty plea offer form lists two separate counts, person not to possess and [possession] with intent to deliver, and an aggregate sentence of 5 to 10 years. *See*[] Exhibit D-1.[2] He estimated that Mr. Wray gave him this form about six months before his trial. *Id.* at 8. [Appellant] maintained that at the time he spoke to Mr. Wray about the plea offer[,] he did not know how many counts he was facing. *Id.* at 10. [Appellant] also maintained that he was not aware when the plea offer was conveyed that the other 15 to 20 counts would be *nol*[] *prossed*, if he accepted the plea offer. *Id.* [Appellant] told this [c]ourt that if he [had been] made aware of that, he might not have gone to trial. *Id.* at 11. [Appellant] told this [c]ourt that he thought a 5 to 10 year offer was a good deal because he thought his initial offer was going to be 10 to 20 years. *Id.* According to [Appellant,] Mr. Wray brushed the plea offer off and told him that the Commonwealth was offering him "the max[.]"[] *Id.* at 13. It was [Appellant's] impression from that conversation that he was being offered the max in the plea agreement. *Id.* at 15. He stated he had no clue how many [offenses] he was charged with[,] and Mr. Wray never explained to him what his maximum exposure would be if he went to trial. *Id.* at 15-16. Additionally, [Appellant] denied that Mr. Wray ever had any discussions with him about his prior record score or offense gravity score. *Id.* at 17. It was [Appellant's] testimony that after that initial conversation about the plea offer[,] Mr. Wray never spoke about it with him again. *Id.* at 11-12.

[2] There are some handwritten notes in the margin of the form, wherein it reads, "Not guidelines, is max, is not F2, is a[n] M1." These are [Appellant's] own notes that he added at two separate times, once during his initial conversation with Mr. Wray and then much later after this initial conversation. [*Id.* at] 5-6, 13-14[].

[Appellant] further testified that at the time the plea was conveyed, the guilty plea offer form showed that a person not to possess was graded as a second[-]degree felony. *Id.* at 13. It was not until after conviction that anyone explained this was an error because the charge should have been graded as a first[-]degree misdemeanor. *Id.* at 13-14.

The Commonwealth cross-examined [Appellant] as to his direct testimony that he was not aware[,] when the plea offer was conveyed[,] that the other 15 to 20 counts would be *nol*[] *prossed* if he accepted the plea offer. *Id.* at 20. [Appellant] admitted that he knew that there were more than two charges against him, *i.e.*, more than the two listed on the guilty plea offer form, but he just didn't know how many charges there were. *Id.* at 21. Further, [Appellant] testified that he told Mr. Wray that he wanted to plead guilty and that he wanted to accept the offer because he thought it was a good offer. *Id.* at 24. [Appellant] unequivocally told this [c]ourt that he told Mr. Wray he wanted to plead guilty. *Id.*

On behalf of the Commonwealth, Kathleen McLaughlin testified. Ms. McLaughlin is an Assistant District Attorney in the Montgomery County District Attorney's Office. *Id.* at 27-28. During the relevant time period, Ms. McLaughlin was the captain of the drug unit, and in the course of that position, she became involved in [Appellant's] case. *Id.* at 28. She was the prosecutor assigned to handle the matter, which in part entailed reviewing the case file to get a complete understanding of the case. *Id.* at 29. After Ms. McLaughlin's complete and full understanding of the case, she conveyed a guilty plea offer of an aggregate of 5 to 10 years' imprisonment. *Id.* at 31. She considered the charges and the amounts of things that were there, such as the drugs and guns, taking into account guidelines, [and] prior history. *Id.* After the offer was conveyed, she did not have specific conversations with Mr. Wray about the offer; however, throughout the process, it was [Appellant's] contention that he was innocent, [and] that he would be vindicated at trial. *Id.* at 33-34. [Appellant] wanted to have a [Pa.R.Crim.P.] 600 hearing, a full *habeas* hearing, [and] a

motion to compel the confidential informant hearing, [all of] which was done. *Id.*

As to the [incorrect] grading of the person not to possess charge, Ms. McLaughlin testified that it would not have ultimately affected the plea offer she made of 5 to 10 years. *Id.* at 35-36.

PCO at 2-5.

In rejecting Appellant's ineffectiveness claim, the PCRA court "found [Appellant's] testimony that Mr. Wray dismissed the plea offer as 'the max' and brushed it aside without further conversation as not credible." *Id.* at 9. The court explained that,

[Appellant's] testimony was contradictory. On the one hand[,] he stated that Mr. Wray did not discuss the plea deal with him simply dismissing it as "the max[,"] but on the other hand[, Appellant] testified that he knew it was a good deal and that he told Mr. Wray he wanted to plead guilty and take the deal.

*Id.* Based on Appellant's incredible testimony, the court found that his underlying claim lacked arguable merit. *Id.* Appellant's testimony, as described by the PCRA court, supports its credibility determination, thus binding this Court to accept it.[2] *See Commonwealth v. Abu–Jamal*, 720 A.2d 79, 99 (Pa. 1998) ("Just as with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding on this [C]ourt."). Accordingly, his underlying ineffectiveness claim lacks arguable merit.

_____

[2] Although the record contains an order by the PCRA court directing the court reporter to produce a transcript of the PCRA hearing, and the court cites to a transcript of that proceeding, it is not included in the certified record transmitted to this Court. Our efforts to locate the transcript were fruitless. Thus, we accept the PCRA court's recitation of the testimony offered at that proceeding, which Appellant does not refute.

Nevertheless, we also agree with the PCRA court's conclusion that Appellant failed to establish that Mr. Wray had no reasonable basis for purportedly advising him not to accept the plea offer. Notably, Appellant did not call Mr. Wray to the stand at the PCRA hearing. Concluding that this failure was detrimental to his ineffectiveness claim, the PCRA court reasoned:

> When an evidentiary hearing on a claim of ineffectiveness is granted, the burdens of production and persuasion are on the petitioner. **Commonwealth v. Jones**, 596 A.2d 885, 888 (Pa. Super. 1991). … [A] petitioner must establish that each prong of the test for ineffectiveness was met. In this case, [Appellant] has not met his burden because he failed to establish that Mr. Wray lacked a reasonable basis for his acts or alleged omissions; therefore, the claim fails.
>
> At the evidentiary hearing, [Appellant] offered only his testimony to establish that Mr. Wray acted ineffectively. Generally, "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012); **Commonwealth v. Colavita**, 993 A.2d 874, 895 (Pa. 2010). While there may be cases where the absence of a reasonable strategy is uncontested, there is "a strong preference that counsel be heard from before being found ineffective." **Id.** at 895. "The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract." **Id.** at 896; **see also Commonwealth v. Johnson**, 139 A.3d [1257, 1276] (Pa. 2016) (holding that [a bald assertion of unreasonableness is insufficient] to sustain [a petitioner's] burden [of proving] that counsel's actions were unreasonable[]); **Commonwealth v. Duffey**, 855 A.2d 764, 775 (Pa. 2004) (finding that in the absence of testimony from counsel, the court "should refrain from gleaning whether…a reasonable basis exists[]"). Thus, in order to establish that Mr. Wray lacked a reasonable basis for his alleged inactions, [Appellant] should have offered his testimony at the evidentiary hearing. This [c]ourt did not hear from Mr. Wray as to why the case ultimately went to trial. Perhaps [Appellant] insisted on his innocence and [counsel] had no choice but to go to trial, and that was a reasonable strategy. The fact is [that,] without Mr. Wray's testimony[,] this [c]ourt is only left to surmise what happened.

PCO at 7-8.

In response to the court's rationale, Appellant contends that counsel's testimony was unnecessary to proving his ineffectiveness claim because he "is not challenging trial strategy or [the] basis for how trial counsel conducted his trial." Appellant's Brief at 11. Appellant explains that, instead, he "is specifically making a claim pursuant to **Missouri v. Frye**, [566 U.S. 1399] (2012)[,] and **Lafler v. Cooper**, [566 U.S. 156] (2012), that he did not receive effective [assistance of] counsel due to the fact that trial counsel never properly advised him of the plea offer in this case and[,] as a result of trial counsel's lack of explanation, he rejected the plea offer and went to trial." **Id.**

It seems that Appellant is suggesting that, because he is alleging that counsel **failed to explain** the plea offer, we must presume that counsel acted unreasonably. Neither of the two cases on which he relies — **Lafler** and **Frye** — supports this position. For instance, in **Lafler**, the parties agreed that "the performance of respondent's counsel was deficient when he advised respondent to reject [a favorable] plea offer on the grounds he could not be convicted at trial." **Lafler**, 566 U.S. at 163. While this concession made it unnecessary for the Court to explore the reasonableness of counsel's conduct, **id.**, the **Lafler** Court recognized that the "**Strickland** ... test applies to challenges to guilty pleas based on ineffective assistance of counsel[,]" and that "[t]he performance prong of **Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness**," **id.** at 162-63 (emphasis added).

In **Frye**, the Supreme Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." **Frye**, 566 U.S. at 145. As in **Lafler**, the Court made clear "that claims of ineffective assistance of counsel in the plea bargain context are governed by the … test set forth in **Strickland**," which includes a reasonableness inquiry. **Id.** at 140 (citing **Hill v. Lockhart**, 474 U.S. 52, 57 (1985) (stating that the **Strickland** test for ineffectiveness applies to the plea process; therefore, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show[, *inter alia*,] that counsel's representation fell below an objective standard of reasonableness") (quoting **Strickland**, 466 U.S. at 687–88)). Because in **Frye**, it was undisputed that defense counsel had allowed a formal offer with a fixed expiration date to expire without communicating it to his client, the Court found that "defense counsel did not render the effective assistance the Constitution requires." **Id.** at 145. It then moved on to the question of whether the defendant was prejudiced by counsel's deficient representation. **Id.** at 147 ("Here defense counsel did not communicate the formal offers to the defendant. As a result of that deficient performance, the offers lapsed. Under **Strickland**, the question then becomes what, if any, prejudice resulted from the breach of duty.").

It is apparent that under **Strickland**, **Lafler**, and **Frye**, Appellant bore the burden of proving that Mr. Wray acted unreasonably in failing to

adequately explain the Commonwealth's plea offer.[3] He failed to do so. Unlike in **Lafler** and **Frye**, there was no consensus on what advice or information counsel did, or did not, give to Appellant about the Commonwealth's plea offer. Appellant testified about what he recalled Mr. Wray telling him, but the court found his testimony contradictory and incredible. Problematically, Appellant failed to call Mr. Wray to testify, thus precluding the court from hearing counsel's version of the events surrounding Appellant's rejection of the plea offer. Based on this record, we discern no error in the court's conclusion that Appellant failed to prove that Mr. Wray acted unreasonably. Thus, Appellant's ineffectiveness claim fails.

In Appellant's second issue, he contends that the PCRA court erred by preventing him from presenting evidence regarding Mr. Wray's "disciplinary board opinion and findings suspending trial counsel from the practice of law…." Appellant's Brief at 12-13. Appellant argues that this evidence would have been relevant to the court's assessment of the credibility of Appellant's testimony that Mr. Wray acted deficiently in advising him about the Commonwealth's plea offer. **Id.** at 13.

_____

[3] This Court has also applied the three-pronged test for ineffectiveness — including the reasonable-basis prong — to a claim that counsel acted ineffectively by failing to fully or properly advise a defendant about a plea offer from the Commonwealth. **See Commonwealth v. Chazin**, 875 A.2d 732, 734-35 (Pa. Super. 2005) (applying the three-pronged ineffectiveness test to a claim that counsel failed to fully advise the defendant about a plea offer).

We agree with the Commonwealth that Appellant's claim is waived for lack of development. *See* Commonwealth's Brief at 29. As the Commonwealth correctly points out, "It is not for this Court to develop an appellant's arguments." *Id.* (quoting *Commonwealth v. Rush*, 959 A.2d 945, 950 (Pa. Super. 2008) (citations omitted)). Here, Appellant presents a mere three sentences in support of his second issue, tacked onto the end of his ineffectiveness claim. While he mentions Pa.R.E. 401 and 402, he fails to discuss how those rules apply to the court's ruling in this case. Appellant also provides no citation to any other legal authority. In view of Appellant's undeveloped and legally unsupported argument, we deem his second claim waived. *See Rush*, 959 A.2d at 950-51 ("[I]t is the appellant's obligation to present developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because of those errors. If an appellant fails to do so, we may find the argument waived.") (citation omitted).[4]

---

[4] In any event, we would conclude that Appellant is not entitled to relief on this claim. The PCRA court noted that "the trial in this case was scheduled around the fact that Mr. Wray was going to be suspended…." *Id.* at 11 n.3. Thus, the PCRA court was obviously aware that Mr. Wray committed disciplinary infractions significant enough to result in his suspension, and it presumably factored that information into its assessment of the credibility of Appellant's testimony about Mr. Wray's representation. For this reason, we fail to see — and Appellant does not explain — how he was prejudiced by the court's decision to preclude the evidence regarding specific misconduct by Mr. Wray in cases other than Appellant's. Consequently, we would agree with the Commonwealth that any error in the court's preclusion of this evidence was harmless. *See* Commonwealth's Brief at 34 n.4; *Commonwealth v. Fewell*,

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/21

---

654 A.2d 1109, 1115 (Pa. Super. 1995) ("An error in the admission or exclusion of evidence requires reversal unless the Commonwealth establishes that the error was harmless beyond a reasonable doubt.").